UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-CR-323 (JEB) |
| : | |
| JIHAD JACKSON, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this sentencing memorandum to assist the Court's consideration of sentencing in this case. Following defendant Jihad Jackson's plea of guilty to Count One of the Indictment, for a violation of 18 U.S.C. § 922(o), Unlawful Possession of a Machinegun, Mr. Jackson now faces a guideline sentence of 46 to 57 months of imprisonment, one to three years of supervised release, and a fine of $20,000 to $200,000. For the reasons set forth below, the Government respectfully recommends that the Court impose a sentence of 46 months of imprisonment followed by a three-year term of supervised release.

## PROCEDURAL HISTORY

On September 19, 2023, the defendant was charged by Indictment with violations of 18 U.S.C. § 922(o), Unlawful Possession of a Machinegun, and 18 U.S.C. § 922(k), Possession of a Firearm with an Obliterated Serial Number, arising from the seizure of a loaded Glock 27, .40 caliber firearm from the defendant on August 18, 2023 (ECF No. 1.). The defendant was arrested in this case on September 20, 2023, and has been detained since that time (ECF No. 4). On December 1, 2023, the defendant pleaded guilty to Count One of the Indictment pursuant to a plea agreement (ECF Nos. 14-16; December 1, 2023, Minute Entry).

## ANALYSIS

**I.     The Offense Conduct**

As summarized in the Statement of Offense in Support of Guilty Plea (ECF No. 16) and the Presentence Investigation Report (ECF No. 18, ¶¶ 15-20), Mr. Jackson's guilty plea acknowledged the following criminal conduct:

On August 18, 2023, Metropolitan Police Department ("MPD") officers patrolling the area in and around the 2200 block of Savannah Terrace SE, Washington, D.C.—a residential apartment complex—observed Mr. Jackson flee from police while holding his front waistband in a manner that appeared consistent with attempting to secure a firearm. Indeed, upon stopping Mr. Jackson, he acknowledged that he was in possession of a firearm. Law enforcement recovered a Glock 27, .40 caliber firearm from inside of the defendant's front waistband tucked underneath his compression shorts. The firearm was loaded with one round of ammunition in the chamber, ready to be fired, and 15 additional rounds in the magazine. The firearm was also equipped with a machinegun conversion device, commonly known as a "Glock switch," which converts the semi-automatic firearm into a fully automatic machinegun.

 




The firearm's serial number was obliterated in three locations—on the frame, slide, and barrel—as depicted below:



In addition, law enforcement recovered 36 pills hidden inside of the defendant's sock, including 35 blue pills stamped "M" on the front and "30" on the back, and one white pill stamped "RP" on the front and "5 325" on the back.[1]

---

[1] The defendant pleaded guilty before laboratory testing of these of these substances was completed. A field test of the pills yielded a positive result for the presence of acetaminophen but could not rule out an illegal narcotic. Authentic pills marked with "M" and "30" correspond to oxycodone pills, and those marked with "RP" and "5 / 325" to oxycodone hydrochloride and acetaminophen pills, though seizures of similar pills often reveal that the substances are actually counterfeit pressed pills containing fentanyl.

3

 

## II. Legal Background

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515

4

U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, Commentary, Background.

### III. Defendant's Sentencing Guidelines Calculation

#### A. Defendant's Criminal History Category

The Government agrees with Probation that Mr. Jackson's criminal history score is zero, which translates to Criminal History Category I (PSR ¶¶ 38-41).

#### B. Total Offense Level

The Government also agrees with Probation's assessment of the applicable Sentencing Guidelines as follows (PSR ¶¶ 26-37):

| | | |
|---|---|---|
| U.S.S.G. § 2K2.1(a)(5) | Base Offense Level | 18 |
| U.S.S.G. § 2K2.1(b)(4)(B) | Specific Offense Characteristic *Obliterated Serial Number* | +4 |
| U.S.S.G. § 2K2.1(b)(6)(B) | Specific Offense Characteristic *Commission of Another Felony* | +4 |

In addition, the Government agrees that a 3-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b) is appropriate in this case, resulting in a total adjusted offense level of 23, which translates to a Guidelines range of 46-57 months of imprisonment.

### IV. Sentencing Recommendation

Pursuant to the Plea Agreement, the Government respectfully submits that the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a) support a Guideline sentence in this case of 46 months of imprisonment for Count One. The Government further recommends that the Court impose a three-year term of supervised release to support and supervise Mr. Jackson's reentry following his term of imprisonment. The Government also recommends that the Court impose a

special condition of supervised release requiring the defendant to stay away from the Savannah Terrace SE area. The Government does not recommend that a fine be imposed.

    A.    **The Nature and Circumstances of the Offense**

The defendant's conduct in this case—carrying a loaded machinegun, during the day in a residential apartment complex, while in the possession of narcotics with the intent to distribute—presents a serious danger to the safety of the community and warrants a Guideline sentence in this case. The defendant's possession of a loaded machinegun is a uniquely dangerous offense: Mr. Jackson's Glock 27, 40 caliber firearm, equipped with a Glock switch conversion device, was fully loaded (including a chambered round), fully automatic, and fully capable of firing all 16 rounds in a matter of seconds.

Mr. Jackson's conduct demonstrates that he was an armed drug dealer in a residential apartment complex in Southeast D.C. at the time of this incident Law enforcement's review of surveillance footage at the Woodberry Village apartment complex on August 17-18, 2023, revealed Mr. Jackson interacting with others in a manner consistent with selling drugs in and around the area. Mr. Jackson is visible periodically walking across the complex and meeting with subjects in vehicles that appear to be idling. During these meetings, Mr. Jackson reaches through the window or gets into the front passenger seat for approximately 30 seconds. Surveillance shows apparent hand movements and handshakes during these encounters. Below are still images of the surveillance footage:




**August 17, 2023**




**August 18, 2023**

Moreover, the serial number for Mr. Jackson's Glock 27, .40 caliber firearm was obliterated in all three locations. Firearm serial numbers are typically obliterated by illegal traffickers and possessors in order to conceal the origin and history of a firearm.

Mr. Jackson's possession with intent to distribute controlled substances and the obliterated serial numbers on his firearm are both incorporated into the applicable Sentencing Guideline as aggravating Specific Offense Characteristics (PSR ¶¶ 28-29).

B.     **The History and Characteristics of the Defendant**

Although Mr. Jackson does not have any criminal history points, his own statements and admitted conduct reveal that this offense was not an isolated incident, but instead part of a course of criminal conduct. First, Mr. Jackson has admitted that he possessed the Glock 27 firearm for at least 1-2 years. (Statement of Offense at 3, ECF No. 16.) Second, Mr. Jackson has released music videos under the nickname *Wardyyhard* in which he presents himself as a member of the Chase Down Gang; displays firearms and drugs; and specifically raps about shootings, threats of harm to others, and firearms equipped with Glock switches (*ie.* machineguns), as summarized in part below:

- *Who Wit It*, available at https://www.youtube.com/watch?v=pwa2cxhzzVE

    *"G19 with a switch" / "I'm trying to chase me an op"*





- *Back Ina Mix*, available at https://www.youtube.com/watch?v=U86HBhtQLNI

"G19 with a switch goin' wack em" / "I got switch on their ass"





The Government respectfully submits that a Guideline sentence is warranted in this case because Mr. Jackson must be specifically deterred from such dangerous and repeated conduct in the future. The defendant's lack of previous convictions is already accounted for in the applicable Guideline range. However, the defendant's lack of criminal history is not an accurate

representation of his conduct prior to his arrest in this case and therefore should not be considered as an additional mitigating factor above and beyond his Criminal History Category.

      **C.**      **The Need for the Sentence Imposed**

The recommended sentence is appropriate in order to reflect the seriousness of Mr. Jackson's offense in this case, to promote respect for the law and prohibition of illegal machineguns and firearms in the community, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). The recommended sentence would also serve to protect the public from additional crimes by Mr. Jackson while he is punished and rehabilitated, as well as serve to provide adequate deterrence from Mr. Jackson committing other offenses going forward. *Id.* § 3553(a)(2)(B)-(C). Moreover, the recommended sentence would support general deterrence for others who may consider unlawfully possessing machineguns, with or without connection to narcotics activity, which are particularly dangerous weapons that pose great harm to others in this District. *Id.* § 3553(a)(2)(B).

The Government also recommends that Mr. Jackson be sentenced to three years of supervised release following his release from the term of imprisonment in this case. The Government believes that a three-year term of supervised release after imprisonment would provide necessary support, supervision, and opportunity for Mr. Jackson's reentry and rehabilitation.

The Government recommends that the defendant's supervised release include a special condition requiring him to stay away from the Savannah Terrace SE area, where he was arrested in this case, defined as follows: 18th Street SE to the West; Alabama Avenue SE to the North; 23rd Street SE to the East; and Savannah Street SE to the South. These boundaries encompass Savannah Terrace SE and surrounding apartment communities. Mr. Jackson's conduct revealed

that he was an armed drug dealer in that residential community prior to his arrest and the PSR does not provide any future justification for Mr. Jackson to return to that location.

The Government supports Probation's recommended special conditions to ensure that Mr. Jackson engages in educational and training opportunities that will improve his skills and opportunities after imprisonment. Additionally, the Government recommends that Mr. Jackson be screened for substance abuse and be required to complete treatment as appropriate.

### V. The Government's Sentencing Recommendation

For the reasons described above, the Government respectfully recommends that the Court impose a Guideline sentence of 46 months of imprisonment for Count One, to be followed by three years of supervised release. A significant period of imprisonment is required and warranted in this case based on Mr. Jackson's dangerous conduct. In addition, this conviction and sentence should deter Mr. Jackson from additional crimes in the future and also serve to generally deter other persons from committing similar offenses in our community.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:   */s/ Thomas G. Strong*
Thomas G. Strong
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
202-252-7063
thomas.strong@usdoj.gov

## **CERTIFICATE OF SERVICE**

  I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on March 4, 2024.

          By: */s/ Thomas G. Strong*
             Thomas G. Strong
             Assistant United States Attorney

1